J. I. WILLIAMS, MRS. G. A. WINDERS, MRS. R. L. WOODS, L. G. HOL-
LINGSWORTH, WALTER WILLIAMS, FRED WILLIAMS, MRS.
CLAUDE HARRIS, MRS. CARY DANIELS, MRS. HOWARD WIL-
LIAMS MOYE, MRS. HAZEL WILLIAMS JORDAN. WILLIAM WIL-
LIAMS, H. B. WILLIAMS, JR., MRS. MARJORIE WILLIAMS DAVIS,
MISS EDNA WILLIAMS, IN THEIR OWN BEHALF AND ALL OTHERS
SIMILARLY SITUATED, v. JOHN E. WILLIAMS, PAUL J. SMITH. AND
S. V. WILKINS, TRUSTEES OF THE UNIVERSALIST CONVENTION OF
NORTH CAROLINA AND MISS ROSA WILLIAMS.

(Filed 16 June, 1939.)

1. **Wills § 33h—**

   Charitable trusts are not subject to the rule against perpetuities,
   ch. 264, sec. 1, Public Laws of 1925, being merely declaratory of the
   existing law, and limitations over from one charity to another may be
   made to take effect after the period prescribed by the rule against perpe-
   tuities.

2. **Same: Trusts § 1d—Limitation over after expiration of period pre-
   scribed held for charitable purposes and not subject to rule against
   perpetuities.**

   The will in question provided that the testator's property should be
   held in trust for the advancement of a religious denomination, defined the
   purposes which should be considered as embraced in this term, and pro-
   vided that the trustees should be elected from the executive board of
   the three church organizations designated as beneficiaries. The will
   further provided that at the expiration of fifty years the *corpus* of the
   estate should vest in a church school if such school should be established
   in this State, otherwise the *corpus* should be disposed of by the trustees
   in such manner as they should deem best. *Held:* The limitation over in
   the event the school should not be established does not give the trustees
   the unrestricted power of disposition so that the property could vest at
   that time in individuals in violation of the rule against perpetuities, but
   the limitation over is upon the same conditions governing the disposition
   of the income, and is therefore a charitable trust not subject to the rule
   against perpetuities, and a court of equity would have jurisdiction to
   prevent any disposition of the property for purposes inconsistent with
   such charitable uses.

3. **Same—Limitation over for charitable uses held not invalid as being
   too indefinite as to purpose and beneficiaries intended.**

   The will in question established a trust with provisions that the
   income from the property should be used for the advancement of a
   religious denomination and defined the purposes which should be consid-
   ered as embraced within that term as being the teaching of the gospel
   according to the church convention, building and repairing churches and
   parsonages, making donations to educational institutions of that faith
   and helping young men or women who expressed a desire to enter the
   church university to obtain the preparatory education therefor. The will
   further provided, by a proper construction of the instrument, for a con-
   tingent limitation over of the *corpus* of the estate in accordance with

the provisions governing the uses of the income. *Held:* The contingent limitation over of the *corpus* of the estate is not void for uncertainty as to the purposes and beneficiaries intended, such purposes being sufficiently defined to be effective under the provisions of ch. 264, sec. 1, Public Laws of 1925 (Michie's N. C. Code, 4035 [a]).

APPEAL by plaintiffs from *Nimocks, Jr., Judge,* at March Term, 1939, of DURHAM. Affirmed.

*R. O. Everett and Robt. Holleman for plaintiffs, appellants.*
*Brooks, McLendon & Holderness for defendants, appellees.*

SEAWELL, J. W. H. Williams died 15 April, 1927, leaving a last will and testament, the pertinent provisions of which are as follows:

"This my last will and testament provides for the disposition of my estate in the following manner and after due and full consideration of same by myself and wife, that my wife, Susan Denmark Williams, provided she survive me, shall have full possession of my estate, real and personal and life insurance to use for her comfort and benefit during the remainder of her life, and at her death the estate shall be held in trust for a period of fifty years, the income, only, to be divided between the trustees of the Universalist General Convention, a corporation of the State of New York; The Woman's National Missionary Association, an auxiliary of the Universalist General Convention, and the North Carolina State Convention of the Universalist Church.

"The trustees of this estate shall be composed of nine members which shall be chosen from the Executive Boards of the three organizations, named above, three from each, they shall be elected to hold office for a term of two years, these elections to be made at the sessions of the General Convention after the first board shall have served until the next succeeding session of the said General Convention.

"These trustees shall have full control over the estate for the term for which they were elected and until their successors are duly installed in office. They shall also have at their disposal the income from the estate after the necessary expenses for upkeep, taxes, insurance and such other expenses as may become necessary from time to time to keep the property in a tenable condition, or for such improvements, in a permanent way, as may seem wise and desirable, shall have been paid from the gross income and before any division shall be made. The Executive Board of each of these three organizations named above shall have the power to designate the disposal of their prorate part of the income, provided, however, that it shall be used only for the advancement of Universalism in the State, the Nation and at large.

"Should there arise any question as to what may be considered the advancement of Universalism it is my will that it shall be interpreted to be the teaching of the gospel under the directions, and as prescribed by the above mentioned the Universalist General Convention Board. It may also be used for building and repairing of churches or parsonages, making donations to colleges or universities of the Universalist faith, helping worthy young men or women to secure a college education when it is their expressed purpose to enter the Universalist University after their education in such schools shall have fitted them for work.

"Realizing the value of higher education for the specific work of teaching and enlightening others in Spiritual truths, and the ever growing necessity for new and better institutions of learning it is my will that should the Universalist denomination at any time within this period of trust establish a school in the State of North Carolina, under the auspices of the North Carolina State Convention of Universalist Churches and the Universalist General Convention, for the education of the youth of our land for better citizenship, or for the preaching of the gospel of Universalism as interpreted by the trustees of the Universalist General Convention, that the whole of the income from this estate, after the above mentioned expenses shall have been paid, shall be applied to the running expenses of such school for the remaining years of the trust.

"At the expiration of the period of trust (fifty years) the estate, with such increase as may have been added, shall become the property of such school as an endowment.

"*The Board of trustees of such institution of learning shall be the judges of how this endowment shall be continued, whether in property or to be converted into cash, but should there be no such school established at the expiration of the trust period the estate may be disposed of in such manner as seems best to the trustees of the three organizations named above.*"

There were no children surviving the testator, and his wife died on 29 March, 1933. The plaintiffs, the six brothers and sisters and representatives of deceased brothers and sisters, of the testator (with the exception of Miss Rosa Williams, a sister, who did not join), bring this action to declare the devise setting up the trust invalid upon the ground that it is void under the rule against perpetuities, and demand the possession of the estate as heirs-at-law of the decedent. The defendants maintain that the will creates a charitable trust inoffensive to the rule.

In this State charitable trusts are not subject to the rule against perpetuities. *Griffin v. Graham,* 8 N. C., 96; *S. v. Gerard,* 37 N. C., 210; *Keith v. Scales,* 124 N. C., 497, 32 S. E., 809; *Whitsett v. Clapp,* 200 N. C., 647, 158 S. E., 183. The Act of 1925, ch. 264, sec. 1, taking

such trusts out of the rule of perpetuities, is in this respect but declarative of existing law. Limitations to and over from one charity to another, or to trustees for a charitable use, are not too remote, although the limitation may take effect after the period prescribed in the rule against perpetuities. See 48 C. J., 974, note 16; *Hopkins v. Grimshaw*, 165 U. S., 342, 41 L. Ed., 739; *Roxbury, etc. Sav. Inst. v. Roxbury Home for Aged Women*, 244 Mass., 583, 139 N. E., 301; *Lennig's Estate*, 154 Pa., 209, 25 A., 1049.

All this the plaintiffs concede; and further admit that the provisions of the will under consideration would have no infirmity in that respect except for the provision contained in the last paragraph, intended to operate contingently in case of a failure to establish a school of the character described in the will during the fifty-year period of the trust. ". . . but should there be no such school established at the expiration of the trust period the estate may be disposed of in such manner as seems best to the trustees of the three organizations named above."

It is insisted that this breaks the continuity of the charitable trust, since, on failure of the contingent limitation to the school, the trustees of the three organizations named in the will have power to dispose of the trust property at their discretion without any limitation thereof, it is contended, to a further definite charitable use, the devise thus being subject to vest, by virtue of the provisions of the will itself, too remotely, that is, beyond the period contemplated in the statute against perpetuities, in some private holder. It is further insisted that if the testator might have intended that the trust estate should continue to be used for some charitable purpose, the devise is too uncertain, with respect to the purpose and beneficiaries intended, to be valid. They insist, therefore, that the whole devise is void *ab initio,* and that the plaintiffs, heirs-at-law of the testator, are now entitled to the estate. Gray Perpetuities, 201; *Moore v. Moore,* 59 N. C., 133; 48 C. J., 943.

Apart from the question of indefiniteness, the test of the validity of the devise, as assailed, is whether, presently considered, there is a possibility that the provisions of the will may vest the property in a private holder beyond the period limited in the rule against perpetuities. *Moore v. Moore, supra;* 48 C. J., 944. The will itself makes no provision for the establishment of a Universalist School in North Carolina, and, since it may or may not be established independently, the clause containing the limitation over may be considered as presently invoked.

The courts are not anxious to secure a technical result whereby the testamentary disposition of property for charitable purposes may be defeated. *St. James v. Bagley,* 138 N. C., 384, 50 S. E., 841. We think the will, considered as a whole, evidences the intent of the testator

to dedicate the property devised, after the termination of the life estate, to the advancement of Universalism in North Carolina; and in definition of that general purpose, should it be challenged, it is explained that it may be brought about by teaching the gospel, under the direction of the Universalist General Convention Board, building and repairing churches and parsonages of that denomination, making donations to churches and colleges of the Universalist faith, and enabling worthy young men and women to secure a college education when it is their express purpose to enter the Universalist University. In the event a Universalist school is not meantime established in the State, it is the apparent intention of the testator that his benevolence shall not be defeated, but that the property shall remain impressed with the character of the trust first mentioned, to be administered in the sound judgment of the trustees of the three organizations in the furtherance of the purposes described, or such as might be consistent with similar trusts to the same end already imposed upon them through their official connection with the organizations named. Had it been the intention of the testator to permit the property to pass out of the channel of charitable use to which he had committed it, he would hardly have named as agents for that purpose the trustees of the three organizations, with the expectation that it might be put to private use or uses inconsistent with the trust he intended to create. That the property was not put under their control for their own benefit, or for indiscriminate disposition as mere individuals, seems reasonably clear. "Trustees of the three organizations named above" is not a designation of individuals without relation to office. The power of disposition is made to trustees already charged with duties to these three charitable organizations, and is presumably made in that relation. *S. v. Gerard, supra.* In searching for the intent of the testator, it is not unreasonable to assume that he understood that their duties and their obligations to these organizations were *ejusdem generis* with those which he sought to impose, and that the objects and purposes of this devise would be included within functions already exercised by the trustees named, and that their power and authority over the devised property, as well as over the property already under their administration, would be circumscribed by the charitable nature of the trusts they were administering and their obligations thereto. *Whitsett v. Clapp,* 200 N. C., 647, 158 S. E., 183; *Woodcock v. Trust Co.,* 214 N. C., 224, 227, 199 S. E., 20.

If this view is correct, and we have no doubt it is, a Chancery Court would have jurisdiction to interfere with any attempt to devote the devised property to purposes inconsistent with such charitable uses. *Miller v. Atkinson,* 63 N. C., 537.

As to the reliance which a testator may place upon the obligation which insures a continuing charitable use of the property he desires to be devoted to a public charity without particularizing the details of its use, we may quote, as to a devise or bequest to a church, 10 Am. Jur., 626: "The very term 'church' imports an organization for religious purposes, and property given to it, *eo nomine,* in the absence of all declaration of trust or use must, by necessary implication, be intended to be given to promote the purposes for which a church is instituted, the most prominent of which is the public worship of God. It follows that the legitimate use by a church of property so given must result in its application for the benefit of those who attend upon, or are within the sphere of the influence of the services of the church by bringing them under the influence of religion." *Ladies Benevolent Society v. Orrell,* 195 N. C., 405, 142 S. E., 493; C. S., 3570.

Applying the rule that words and phrases used in a will are not necessarily used in their technical sense unless the occasion and manner of their use should require such a meaning to be given them, we are not impressed with the necessity of construing the expression "disposed of," as used in this clause of the will, as implying that authority is given to the trustees of these organizations to alienate the property in any manner they see fit without obligation to the nature of the trust imposed upon them by the organizations they already serve, and that implied in the donation made by this will. This term is just as appropriate to signify an orderly administration of the funds committed to them for charitable use, and the added qualification "as seems best to them" may be construed more consistently as indicating a sound discretion in their use than as implying an unrestricted power to alienate according to desire and caprice. It is used in the former sense in earlier provisions of the will. See *Page v. Covington,* 187 N. C., 621, 122 S. E., 481; *Grace Church v. Ange,* 161 N. C., 314, 77 S. E., 239; *Shannonhouse v. Wolfe,* 191 N. C., 769, 133 S. E., 93.

We do not find any indefiniteness in the devise that is not cured by the Act of 1925, Michie's Code, sec. 4035 (a), the applicable part of which reads as follows: "No gift, grant, bequest or devise, whether in trust or otherwise, to religious, educational, charitable or benevolent uses or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, shall be invalid by reason of any indefiniteness or uncertainty of the object or beneficiaries of such trust, or because said instrument confers upon the trustee or trustees discretionary powers in the selection and designation of the objects or beneficiaries of such trust or in carrying out the purpose thereof, or by reason of the same in contravening any statute or rule against perpetuities."

The devise is a valid disposition of the property not objectionable for indefiniteness, and does not offend against the rule of perpetuities. *Hass v. Hass,* 195 N. C., 734, 143 S. E., 541; *Whitsett v. Clapp, supra; Woodcock v. Trust Co., supra.*

We do not find other contentions of the plaintiffs sufficiently meritorious to change the result.

The judgment is

Affirmed.