STATE OF NORTH CAROLINA v. JAMES ROBERTS LYNCH

No. 7921SC818

(Filed 6 May 1980)

**Bigamy § 2; Marriage § 2— whether marriage performed before proper minister — question of ecclesiastical law**

    In a bigamy prosecution in which the crucial determination was whether the person before whom a purported prior marriage of defendant was solemnized was an ordained minister of any religious denomination or a minister authorized by his church, the determination of whether there was a church or a religious denomination was not for the jury since it was a matter of ecclesiastical law, and the trial court properly refused to give defendant's requested instructions defining "church" and "religious denomination."

    Judge WELLS dissents.

APPEAL by defendant from *Walker (Hal H.), Judge.* Judgment entered 23 February 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 30 January 1980.

Defendant and Sandra Lynch exchanged wedding vows in the presence of Sandra's father, Chester Wilson. Mr. Wilson, a member of the Catholic faith, had obtained a minister's certificate from the Universal Life Church in Modesto, California, which stated that he was an ordained minister in that church. Approximately four years after the marriage ceremony, defendant and Sandra separated. No divorce was obtained. Seven months later, defendant married Mary Alice Bovender. He was indicted for bigamy. The jury found him guilty as charged. From a judgment imposing a period of probation, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Norma S. Harrell, for the State.*

*Eubanks, Walden & Mackintosh, by Larry L. Eubanks and Bruce A. Mackintosh, for defendant appellant.*

ERWIN, Judge.

It is the rule in this jurisdiction that if a specifically requested jury instruction is proper and supported by the evidence, the trial court must give the instruction, at least in substance. *State v. Bolton,* 28 N.C. App. 497, 221 S.E. 2d 747, *appeal dis-*

*missed*, 289 N.C. 616, 223 S.E. 2d 390 (1976). Thus, our initial inquiry is to determine whether the requested instructions were proper.

The requested instructions read:

"(1) 'Religious denomination' as used in the marriage statute GS § 51-1, means an established organization of individuals or groups of individuals united for the purpose of worshipping in a common manner, providing instruction or dissemination of some tenet or particular faith, or organized for the accomplishment of some common religious purposes. Such a denomination is distinguished from other organized groups in that it exists principally for the maintenance, furtherance or practice of common religious beliefs.

(2) 'Church' as used in the marriage statute GS § 51-1 refers to a body which is a part of a particular Religious Denomination. The term 'Church', means a voluntary organization of people for religious purposes who are associated for religious worship, discipline and teaching and who are united by the profession of the same faith, holding the same creed, observing the same rites, and acknowledging the same ecclesiastical authority."

The essence of defendant's assignment of error is that without the foregoing instructions, the jury could not determine the existence or nonexistence of evidence to support an essential element of the crime of bigamy, *i.e.*, a valid prior marriage. To constitute a valid marriage in our State, the requirements of G.S. 51-1 must be met. G.S. 51-1 provides:

"§ 51-1. *Requisites of marriage; solemnization.* — The consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously and plainly expressed by each *in the presence of the other, and in the presence of an ordained minister of any religious denomination, minister authorized by his church*, or of a magistrate, and the consequent declaration by such minister or officer that such persons are husband and wife, shall be a valid and sufficient marriage: Provided, that the rite of marriage among the Society of Friends, according to a form and custom peculiar to themselves, shall not be in-

terfered with by the provisions of this Chapter: Provided further, that marriages solemnized and witnessed by a local spiritual assembly of the Baha'is, according to the usage of their religious community, shall be valid; provided further, marriages solemnized before March 9, 1909, by ministers of the gospel licensed, but not ordained, are validated from their consummation." (Emphasis added.)

Under the statute, a valid marriage must be solemnized in the presence of one of three persons: (1) an ordained minister of any religious denomination; (2) a minister authorized by his church; or (3) a magistrate. In the instant case, the crucial determination was whether Mr. Wilson was an ordained minister of any religious denomination or a minister authorized by his church. The trial court correctly instructed the jury that whether Mr. Wilson was an ordained minister was not for their determination but was a matter of church law. *See State v. Bray*, 35 N.C. (13 Ired.) 289 (1852). The reasoning set forth in *Bray* justifying this decision is set forth thusly:

"The statute, without assuming to pronounce dogmatically who were true ministers of the gospel, meant to give a catholic rule, by admitting every one to be so, to this purpose, who, in the view of his own church, hath the cure of souls by the ministry of the Word, and any of the sacraments of God, according to its ecclesiastical polity, implying spiritual authority to receive or deny any desiring to be partakers thereof, and to administer admonition or discipline, as he may deem the same to be to the soul's health of the person and the promotion of godliness among the people. When to such a ministry is annexed, according to the canons, or statutes of the particular church, the faculty of performing the office of solemnizing matrimony, the qualification of the minister is sufficient, within the statute."

*Id.* at 295. While the statute interpreted in *State v. Bray, supra*, required that the minister "hath the cure of souls" as part of his dominion, the present statute does not so require. *See* G.S. 51-1. To the contrary, the present statute provides for the solemnization of marriage by any "minister authorized by his church," *id.*, and the statute further states that "marriages solemnized before

State v. Lynch

March 9, 1909, by ministers of the gospel licensed, but not ordained, are validated from their consummation."

What is a church? The trial court instructed the jury that they need not determine whether or not there was a church, because it was a matter of ecclesiastical law; but that a church "may be constituted by having one member, or ten thousand, or anywhere in between or above ten." The primary effect of this instruction was to remove this question from the jury's province. We hold that this was proper.

A church is an organization for religious purposes. *Williams v. Williams*, 215 N.C. 739, 3 S.E. 2d 334 (1939). This is, in essence, the definition which defendant requested the jury be given; however, it was not a proper subject for their determination. Whether or not a church exists must be determined, in the first instance, essentially by examining the economy of the believers and comparing it with the human, religious experience as it has existed throughout the ages. This is not to say that the State is free to reject any religious group that is unorthodox in its beliefs, but rather that a State may examine and scrutinize an organization to ensure that such beliefs are commonly held. Our reaching of this conclusion is bolstered by our courts' interpretation of what a minister is for purposes of the statute. Thus, we hold that whether a church exists is still a question ecclesiastical in nature, because our statute embodies this assumption. We believe that a determination of what a religious denomination is falls within the same category. Accordingly, we hold that the trial court did not err in refusing to give the requested instructions to the jury.

The State presented evidence establishing all of the elements of the crime—bigamy, and the trial court's denial of defendant's motion to dismiss at the close of all the evidence was not error.

In the trial of defendant, we find

No error.

Judge MARTIN (Robert M.) concurs.

Judge WELLS dissents.