L. PENDLETON HAYES AND EDWARD WHALEN, PETITIONERS v. SAM FOWLER,
    BUILDING INSPECTOR, AND VILLAGE OF PINEHURST BOARD OF ADJUSTMENT,
    RESPONDENTS

No. COA94-893

(Filed 6 August 1996)

**1. Zoning § 50 (NCI4th)— bed and breakfast—no accessory
   use permitted by ordinance**

   The trial court properly held that use of a piece of property as
   a bed and breakfast did not constitute an "accessory use" as per-
   mitted by the zoning ordinance, and there was no merit to peti-
   tioners' contention that their proposed rental of four of the
   eleven bedrooms of the house would, under the ordinance defin-
   ition of "accessory use," be "customarily incidental" to their use
   of the structure as a private residence, since the language of the
   ordinance indicated with particularity the intent of the drafters
   that bed and breakfast establishments be excluded as permitted
   accessory uses within the district.

   **Am Jur 2d, Zoning and Planning §§ 52, 233, 704.**

   **What is lodginghouse or boardinghouse within provi-
   sions of zoning ordinance or regulation. 64 ALR2d 1167.**

**2. Zoning § 71 (NCI4th)— permit to operate bed and break-
   fast denied—decision not arbitrary and capricious**

   There was no merit to petitioners' contention that the deci-
   sion by respondent board of adjustment to deny them a permit to
   operate a bed and breakfast was arbitrary and capricious.

   **Am Jur 2d, Zoning and Planning §§ 42, 55, 63, 106, 140,
   584, 724, 879.**

   **Right to cross-examination of witnesses in hearings
   before administrative zoning authorities. 27 ALR3d 1304.**

   **Requirement that zoning variances or exceptions be
   made in accordance with comprehensive plan. 40 ALR3d
   372.**

**3. Zoning § 48 (NCI4th)— church defined—nonconforming
   use of property—continuation of use permitted**

   The plain and ordinary meaning of "church," as used in the
   context of the Village of Pinehurst Zoning Ordinance § 5.3.2, is "a

HAYES v. FOWLER

[123 N.C. App. 400 (1996)]

building set apart for public worship"; therefore, the trial court properly determined that a building used by a church for meetings, bridge club meetings, classes, retreats, and dinners had not been used as a church, but was used in a manner deemed nonconforming under the ordinance, that petitioners could continue such use, and that such use did not allow for expansion of the nonconforming use.

**Am Jur 2d, Zoning and Planning §§ 435-447.**

**Due process clause as violated by zoning regulations affecting churches. 74 ALR2d 377.**

**Change in volume, intensity, or means of performing nonconforming use as violation of ordinance. 61 ALR4th 806.**

**Change in type of activity of nonconforming use as violation of ordinance. 60 ALR4th 902.**

Appeal by petitioners and respondents from order entered 1 July 1994 by Judge Ronald W. Burris in Moore County Superior Court. Heard in the Court of Appeals 10 May 1995.

*Michael B. Brough & Associates, by Michael B. Brough, for Petitioners.*

*Poyner & Spruill, by Lacy H. Reaves and Robin T. Morris, for Respondents.*

JOHN, Judge.

Petitioners and respondents each appeal certain aspects of the trial court's order reviewing a decision of the Pinehurst Board of Adjustment (the Board). For the reasons set out below, we affirm the trial court.

Relevant procedural and factual information is as follows: On 4 April 1994, L. Pendleton Hayes and husband, Edward Whalen (petitioners), applied to respondent Sam Fowler, Village of Pinehurst building inspector (Fowler), for a permit allowing renovations to a historic home ("Maryhurst") which they had contracted to purchase. The owner of the property was the Catholic Diocese of Raleigh (the Diocese), and the premises, located approximately one-half block

away from Sacred Heart Catholic Church (Sacred Heart), have been used by Sacred Heart since 1987 or 1988 as a meeting place for religious and secular groups and for events such as choir practice, religious instruction classes, meetings of the Knights of Columbus, bridge club meetings, board meetings for Sandhills College and the O'Neal School, social gatherings and other community functions. Petitioners indicated to Fowler that they planned "to live in the house and provide rooms for overnight transient guests, host meetings of private groups and host various classes."

Fowler ruled that the proposed uses, aside from use as petitioner's residence, were impermissible under the applicable Village of Pinehurst ordinance (the ordinance). Petitioners appealed to the Pinehurst Board of Adjustment (the Board), which subsequently affirmed Fowler's decision. Petitioners thereafter filed a petition for Writ of Certiorari in Moore County Superior Court. Petitioners alleged the Board erred by refusing to view use of Maryhurst as a bed and breakfast and as a site for meetings, social gatherings and classes, to be "accessory" to their residential use of the property, and further by declining to allow petitioners to continue usages of the property as operated by the Diocese and Sacred Heart.

Following a hearing, the trial court affirmed in part and reversed in part the Board's decision in an order dated 1 July 1994. The court set out the following conclusions of law:

1) Petitioners' proposed use of their property ("Maryhurst") as a bed and breakfast, or Guest House (Tourist Home) . . . is not permissible [under the ordinance] as an "Accessory Use" [in the R-30 Zoning District];

2) . . . [U]se [of Maryhurst by Sacred Heart] did not constitute use of the property as a 'church' (emphasis in original) within the meaning of Section 5.3.2 of [the ordinance]. . . . .

Therefore, use of the property . . . [by Sacred Heart] constituted a nonconforming use of the property which use may be continued by petitioners under Section 11 of the ordinance. . . . .

3) The determination by the Board . . . was not arbitrary and capricious.

On appeal, respondents assign error to the trial court's second conclusion of law, while petitioners challenge the first and third.

The relevant sections of the ordinance read as follows:

SECTION 2. DEFINITIONS AND INTERPRETATIONS

Accessory Building and Construction. A subordinate use building or construction customarily incident to and located upon the same lot occupied by the main use building (guest cottages shall not be permitted).

Accessory Use. A use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use of building (guest cottages shall not be permitted).

Guest House (Tourist Home). Any dwelling occupied by owner or operator in which rooms are rented for guests, for lodging of transients and travelers for compensation, and where food may be served.

SECTION 5.3.1

[Applicable, *inter alia,* to Residential Zone R-30]

These districts are established as districts in which the principal use of land is for single family dwellings. In promoting the general purposes of this Ordinance, the specific intent of each district is:

. . . .

b. To prohibit commercial and industrial use of the land . . . .

SECTION 5.3.2 Permitted Uses

a. Accessory uses clearly incidental to any permitted use and which will not create a nuisance or hazard (guest cottages shall not be permitted).

b. Churches

. . . .

Section 11. NON-CONFORMING USES

11.1 In General

Upon the effective date of this Ordinance and any amendment hereto existing and lawful uses of any building or land which at that time do not meet the minimum requirements of this Ordinance for the District in which the same are located . . . shall

be considered as non-conforming. It is the intent of this Ordinance to permit these non-conforming uses to continue until they are removed, discontinued, or destroyed, but not to encourage such continued use, and to prohibit any further nonconformance or expansion thereof.

11.2 Non-Conforming Uses of Buildings

. . . .

If the non-conforming use of such building is discontinued for a period of one-hundred and twenty (120) days or more, every future use of such premises shall be in conformity with the provisions of this Ordinance . . . .

I.

**[1]** Petitioners first contend the trial court erred by failing to hold that use of Maryhurst as a bed and breakfast constituted an "accessory use" as permitted by the ordinance. Petitioners maintain their proposed rental of four of the eleven bedrooms at Maryhurst would, under the ordinance definition of "accessory use," be "customarily incidental" to their use of the structure as a private residence. We disagree.

Questions involving interpretation of zoning ordinances are questions of law. *Ayers v. Bd. of Adjust. for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201 (1994). Accordingly, the superior court is to apply a *de novo* standard of review to Board decisions involving application and interpretation of zoning ordinances, and the court may freely substitute its judgment for that of the Board. *Ayers*, 113 N.C. App. at 530, 439 S.E.2d at 201. In like manner, on appeal of the judgment of the superior court, this Court must apply a *de novo* standard of review in determining whether "the superior court committed error of law in interpreting and applying the municipal ordinance," *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 137, 431 S.E.2d 183, 187 (1993), and may also freely substitute its judgment for that of the superior court. *Id.*

In construing municipal ordinances, courts are obligated to adhere to the fundamental principles of statutory construction and interpretation. *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). The basic requirement is that we "ascertain and effectuate the intent of the legislative body" as indicated by "the language of the

statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Id.*

Concerning the issue *sub judice, i.e.,* whether petitioners' proposed use of Maryhurst as a bed and breakfast may be considered an "accessory use" contemplated by the ordinance, our *de novo* review reveals the intent of the ordinance to be reflected in Sections 2 and 5.3.2a. In these sections, "guest cottages" are *expressly excluded* from the definition of "accessory use." Although petitioners correctly insist that "guest cottage" (emphasis added) is not defined in the ordinance, the term is indistinguishable from the phraseology "guest house (tourist home)," described in Section 2 of the ordinance as

> [a]ny dwelling occupied by owner or operator in which rooms are rented for guests, for lodging of transients and travelers for compensation, and where food may be served.

The foregoing comports in all respects with petitioners' proposed use of the property as a bed and breakfast. The language of the ordinance thus indicates with particularity the intent of the drafters that bed and breakfast establishments be excluded as permitted accessory uses within Zoning District [Zone] R-30, and the trial court did not err in affirming the Board's ruling to that effect.

## II.

**[2]** Petitioners also challenge the trial court's rejection of their argument that the Board's decision was arbitrary and capricious. This contention cannot be sustained.

In considering whether an administrative decision was indeed arbitrary and capricious, this Court is obligated to apply the "whole record" test. *CG & T Corp. v. Bd. of Adjustment of Wilmington,* 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992). This requires an examination of all competent evidence within the entire record to determine whether the agency decision is supported by substantial evidence, *i.e.,* evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* However, a court engaging in this process may not substitute its judgment for that of the administrative body, however compelling the circumstance, merely because reasonable but conflicting views emerge from the evidence. *Id.* Restrained by the foregoing standard and based upon a thorough review of the entire record herein, we conclude the Board's decision cannot be characterized as arbitrary and capricious.

The Village of Pinehurst acted within its legislatively endowed prerogative, pursuant to N.C. Gen. Stat. § 160A-381, to enact a zoning ordinance prohibiting bed and breakfast establishments within Zone R-30. Even conceding *arguendo* petitioners' assertion that Maryhurst may best be utilized as a bed and breakfast, this alone does not suffice to classify the Board's decision as arbitrary and capricious, particularly in view of the specific prohibition contained within the ordinance.

Further, petitioners' allegation of a resulting substantive due process violation is untenable. Unlike *Mays-Ott Co., Inc. v. Town of Nags Head*, 751 F. Supp. 82 (E.D.N.C. 1990), upon which petitioners rely, no evidence was presented herein that the Village of Pinehurst approved use of Maryhurst as a bed and breakfast and then later withdrew such approval.

## III.

### A.

[3] Lastly, we turn to respondents' contentions concerning the trial court's second conclusion of law, *i.e.*, that Sacred Heart did not use Maryhurst "as a church" (emphasis in original Order) within the meaning of section 5.3.2 of the ordinance, and that Sacred Heart's nonconforming use of the property might therefore be continued by petitioners as permitted by section 11 of the ordinance. Respondents' arguments notwithstanding, we conclude the trial court did not err in its ruling.

Our *de novo* review of the superior court's statutory construction, *see Capricorn*, 334 N.C. at 137, 431 S.E.2d at 187, is complicated by absence within the ordinance of a definition of "church," and further by the lack of prior interpretation by our courts of the term "church" in the context of zoning regulations. Accordingly, we must construe "church" as set out in the instant ordinance by giving effect to the intent of the drafters, *Concrete Co.*, 299 N.C. at 629, 265 S.E.2d at 385, and by assigning to the term its plain and ordinary meaning, *Ayers*, 113 N.C. App. at 531, 439 S.E.2d at 201, but only such meaning that other modifying provisions and the context of the ordinance will permit. *See also Woodhouse v. Board of Commissioners*, 299 N.C. 211, 224-25, 261 S.E.2d 882, 890-91 (1980) (reliance upon canons of statutory construction proper when ordinance does not define term).

The expression "church" ordinarily embraces three basic and related definitions: (1) a building set apart for public worship; (2) a place of worship of any religion; and (3) "the organization of Christianity or of an association of Christians" worshipping together (congregation). *Webster's Third New Int'l Dictionary* 404 (1968).

Respondents promote the third definition and contend "a church is an organization for religious purposes," citing *Williams v. Williams*, 215 N.C. 739, 744, 3 S.E.2d 334, 338 (1939), and *State v. Lynch*, 46 N.C. App. 608, 611, 265 S.E.2d 491, 493, *rev'd on other grounds*, 301 N.C. 479, 272 S.E.2d 349 (1980). Moreover, respondents continue, the drafters of the ordinance did not intend to limit the definition of "church" simply to a building in which religious services are held, but rather intended to encompass use *by* a church, as in the case *sub judice*, for its "parish house" or "fellowship hall" and other church-related purposes. Respondents do not claim worship services were held at Maryhurst, but instead contend use of the premises under the general auspices of Sacred Heart as a site for classes, meetings, retreats, and social activities, including special dinners and bridge club meetings, qualify Maryhurst for "church" status under the ordinance. Under the facts *sub judice*, respondents' argument is unpersuasive.

First, assuming *arguendo* that *Williams*, 215 N.C. 739, 3 S.E.2d 334, and *Lynch*, 46 N.C. App. 608, 265 S.E.2d 491, contain language supportive of respondent's position, we find these cases, which involved consideration of what composition of persons or organization constituted a "church," to be inapposite. The issue herein is zoning, or what particular <u>use</u> may be made of land and what types of buildings may be placed on particular property. *See Freewood Associates v. Board of Adjustment*, 28 N.C. App. 717, 720, 222 S.E.2d 910, 912, *cert. denied, appeal dismissed*, 290 N.C. 94, 225 S.E.2d 323 (1976) (purpose of a zoning law is to limit the use of land in the interest of public welfare).

Next, Section 5.3.2 of the ordinance permits "churches" within Zone R-30, as well as accessory uses, single family dwellings, public utility easements and buried distribution lines, and public wells and lift stations. Considered in this context, adoption of "an organization for religious purposes" as the ordinance definition of "church" would produce the unreasonable result that every building owned by a church or "organization for religious purposes" would qualify as a "church" for purposes of the ordinance. We are required to avoid

interpretations that produce absurd or illogical results, *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 549, 344 S.E.2d 821, 824, *disc. review denied*, 318 N.C. 417, 349 S.E.2d 598 (1986), and therefore reject respondents' contention that Maryhurst constituted a "church" merely because it was owned by the Diocese and used by Sacred Heart. *See* 62 A.L.R. 3d at 201 (". . . the proposed use of the land, and not the nature of the using organization . . . control[s] zoning cases"). Significant also in this context is the location of Maryhurst as a separate structure approximately one-half block from the property on which the Sacred Heart church building rests.

In sum, we believe the plain and ordinary meaning of "church," as used in the context of the Village of Pinehurst Zoning Ordinance Section 5.3.2, to be "a building set apart for public worship." *See Webster's* at 404. *See also* 62 A.L.R. 3d at 201 (among jurisdictions which have attempted to define "church" for zoning purposes, most have adopted definition substantially equivalent to "a building used for public worship"). *Synagogue v. Bates*, 136 N.E.2d 488 (NY 1956), advanced by respondents, is neither controlling authority in this jurisdiction, *see State v. Richards*, 294 N.C. 474, 492, 242 S.E.2d 844, 856 (1978), nor persuasive, and further is distinguishable on its facts and the language of the ordinance involved therein. Under the circumstances *sub judice*, the trial court therefore properly concluded that Maryhurst had not been used as a "church" under Section 5.3.2 of the ordinance.

## B.

Respondents also maintain that Sacred Heart's right to use the property was protected as part of the guarantees of freedom of religion and assembly within the North Carolina Constitution, art. I, §§ 12 and 13, and the United States Constitution, amend. I, and that such protection transformed use of the property by Sacred Heart into a permitted use within the ordinance. This argument cannot be sustained.

The only relevant inquiry herein is whether the use of Maryhurst by Sacred Heart was a conforming use under the language of the ordinance, not whether the town could constitutionally have prevented a particular use of the premises by Sacred Heart. We have determined that Maryhurst was not used as a "church," and thus was used in a manner deemed nonconforming under the ordinance. Further, the ordinance expressly provides at Section 11 that

11.1 [i]t is the intent of this Ordinance to permit these non-conforming uses to continue . . . .

The trial court therefore did not err in holding that the "use may be continued by petitioners under . . . the ordinance."

Finally, we summarily reject respondents' argument that the trial court erred by failing to hold petitioners' proposed use to be different from and an expansion of that by Sacred Heart in contravention of the ordinance provision that "the non-conforming use of land shall not be enlarged or increased." To the contrary, the trial court's determination that Sacred Heart used Maryhurst "as any other community meeting center, *i.e.*, a site for meetings of organizations, committees, groups and for social events" is supported by the record, *see CG & T Corp.*, 105 N.C. App. at 40, 411 S.E.2d at 660, and such finding sustains the court's conclusion, *see Trotter v. Hewitt*, 19 N.C. App. 253, 254, 198 S.E.2d 465, 466 (1973), that "use of the property in this fashion constituted a nonconforming use of the property, which . . . may be continued by petitioners under Section 11 of the ordinance." Further, the trial court guarded against expansion of the nonconforming use and ensured petitioners' awareness of the "nature and extent of such nonconforming use" by including attachments to its order listing the specific nonconforming activities and the parking impact of such activities.

Affirmed.

Judges COZORT and WALKER concur.