JARRETT KAMINSKY AND SUSAN KAMINSKY, PLAINTIFF-APPELLEES V.
ALFRED SEBILE, DEFENDANT-APPELLANT

No. COA99-1037

(Filed 5 September 2000)

**1. Appeal and Error— appealability—motion in limine**

Although defendant assigns error to the trial court's denial of his motion in limine to exclude the injured plaintiff's medical bills, a motion in limine is not appealable.

**2. Damages and Remedies— Civilian Health and Medical Program of the Uniformed Services—medical expenses—recovery by individual plaintiff**

The trial court did not err by denying defendant's motion for judgment notwithstanding the verdict on the issue of whether an individual plaintiff may bring an action to recover medical expenses under the Federal Medical Recovery Act of 42 U.S.C.A. §§ 2651-2653 paid through the Civilian Health and Medical Program of the Uniformed Services under 10 § U.S.C.A. 1072,

because the individual plaintiff's right exists regardless of the United States' right to pursue an action to recover from the tortfeasor.

**3. Damages and Remedies— Civilian Health and Medical Program of the Uniformed Services—medical expenses—government fails to assert or abandons right—collateral source rule**

An individual plaintiff may bring an action to recover medical expenses under the Federal Medical Recovery Act of 42 U.S.C.A. §§ 2651-2653 paid through the Civilian Health and Medical Program of the Uniformed Services under 10 § U.S.C.A. 1072 only when the government fails to assert or abandons its right of recovery under the Federal Medical Recovery Act since the collateral source rule applies to permit full recovery.

**4. Collateral Estoppel and Res Judicata— res judicata—no privity—interests not legally represented**

The trial court did not err by denying defendant's motion for judgment notwithstanding the verdict even though defendant asserted res judicata barred plaintiff from asserting a claim for medical expenses after the United States' prior case and dismissal with prejudice, because: (1) there is no privity between plaintiff and the United States; and (2) plaintiff had no control over the previous litigation, and nothing in the record indicates plaintiff's interests were legally represented in the previous trial.

Appeal by defendant from judgment entered 9 March 1999 and order entered 21 April 1999 by Judge Ronald L. Stephens in Cumberland County Superior Court. Heard in the Court of Appeals 19 May 2000.

*Boose and Gurnee, by Michael C. Boose, for plaintiff-appellee.*

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence and Robert A. Hasty, Jr., for defendant-appellant.*

EDMUNDS, Judge.

Defendant Alfred Sebile appeals jury verdicts in favor of plaintiffs Jarrett and Susan Kaminsky. We find no error.

Jarrett is the son of Susan and Randall Kaminsky, both of whom were active-duty military personnel with the United States Army at

## KAMINSKY v. SEBILE

[140 N.C. App. 71 (2000)]

the time of the incident leading to this action. Defendant, a friend of Jarrett's father, was clearing land to build a house and farm, and Jarrett's father asked his son, who was then fourteen years old, if he would like to help. On 7 September 1993, while working with defendant at a hydraulic log-splitting machine, Jarrett's little finger on his left hand became trapped and was severed below the bottom joint. Jarrett received treatment first at Womack Army Hospital, then at Duke Medical Center.

Pursuant to 10 U.S.C.A. § 1072 (1998), Jarrett's injuries were covered by the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), because Jarrett was a dependent of members of the armed services. Accordingly, CHAMPUS paid most of the medical expenses resulting from Jarrett's injury.

Susan originally filed an action against defendant both individually and as the guardian *ad litem* of Jarrett, but later dismissed the case without prejudice. Thereafter, on 5 September 1996, the United States brought an action against defendant under the Federal Medical Care Recovery Act (FMCRA), 42 U.S.C.A. §§ 2651-2653 (1994 & Supp. 2000), to recover the "reasonable value of [] care and treatment" furnished to Jarrett. On 18 April 1997, the United States dismissed its claims against defendant with prejudice. The case at bar was filed on 5 June 1997 by Jarrett, who had then reached the age of majority, and Susan. Plaintiffs sought to recover for personal injuries and medical expenses.

When the case was called for trial on 8 February 1999, defendant filed and argued a motion *in limine* to preclude any evidence of medical bills incurred for the treatment and care of Jarrett. Defendant cited 10 U.S.C.A. §§ 1095 (1998, amended 1999), 2651 (1994, amended 1996) for the proposition that only the United States Government "incurred" medical expenses. Defendant also argued that the United States' dismissal with prejudice of its claim against defendant was *res judicata* as to any claim brought by Susan. The trial court denied defendant's motion.

The jury found in favor of plaintiffs and awarded Jarrett $35,000 in damages for personal injuries and Susan $29,000 in damages for medical expenses. The trial court entered judgment on 9 March 1999. On 15 March 1999, defendant filed a Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial, which was denied by the trial court on 21 April 1999. Defendant appeals.

I.

**[1]** Defendant assigns error to the trial court's denial of his motion *in limine* to exclude the medical bills for Jarrett's treatment. However, our appellate courts repeatedly have held that motions *in limine* are not appealable. *See, e.g., State v. Hayes,* 350 N.C. 79, 511 S.E.2d 302 (1999); *Southern Furn. Hardware v. Branch Banking and Trust,* 136 N.C. App. 695, 526 S.E.2d 197 (2000); *Heatherly v. Industrial Health Council,* 130 N.C. App. 616, 504 S.E.2d 102 (1998); *T&T Development Co. v. Southern Nat. Bank of S.C.,* 125 N.C. App. 600, 481 S.E.2d 347 (1997). This assignment of error is overruled.

II.

**[2]** Defendant's remaining assignments of error relate to the trial court's denial of his motion for judgment notwithstanding the verdict (JNOV). *See* N.C. Gen. Stat. § 1A-1, Rule 50 (1999). He argues, first, that the federal government had the exclusive right to recover from defendant, and second, that the United States' previous action and dismissal with prejudice is *res judicata* as to Susan's present claim. We will address these contentions *seriatim.*

In ruling on a motion for JNOV, "the [non-movants'] evidence must be taken as true and all the evidence must be viewed in the light most favorable to [them], giving [them] the benefit of every reasonable inference which may be legitimately drawn therefrom, with conflicts, contradictions, and inconsistencies being resolved in the [non-movants'] favor." *Bryant v. Thalhimer Bros., Inc.,* 113 N.C. App. 1, 6, 437 S.E.2d 519, 522 (1993) (citation omitted). Our review of a denial of a motion for JNOV is "whether the evidence viewed in the light most favorable to [the non-movants] is sufficient to support the jury verdict." *Suggs v. Norris,* 88 N.C. App. 539, 543, 364 S.E.2d 159, 162 (1988) (citation omitted).

The FMCRA controls the nature of the United States' right to recover from a tortfeasor the reasonable value of the care and treatment furnished to an injured person. Section 2651 reads in pertinent part:

> (a) Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment
>
> In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured . . . after the

effective date of this Act, under circumstances creating a tort lia-
bility upon some third person . . . to pay damages therefor, the
United States shall have a right to recover from said third person
the reasonable value of the care and treatment so furnished or to
be furnished and shall, as to this right be subrogated to any right
or claim that the injured or diseased person, his guardian, per-
sonal representative, estate, dependents, or survivors has against
such third person to the extent of the reasonable value of the care
and treatment so furnished or to be furnished. . . .

(b) Enforcement procedure; intervention; joinder of parties;
State or Federal court proceedings

The United States may, to enforce such right, (1) intervene or
join in any action or proceeding brought by the injured or dis-
eased person, his guardian, personal representative, estate,
dependents, or survivors, against the third person who is liable
for the injury or disease; or (2) if such action or proceeding is not
commenced within six months after the first day in which care
and treatment is furnished by the United States in connection
with the injury or disease involved, institute and prosecute legal
proceedings against the third person who is liable for the injury
or disease, in a State or Federal court, either alone . . . or in con-
junction with the injured or diseased person, his guardian, per-
sonal representative, estate, dependents, or survivors.

42 U.S.C.A. § 2651(a), (b) (1994). Additionally, the Act provides:

(b) Settlement, release and waiver of claims

. . . [T]he head of the department or agency of the United
States concerned may (1) compromise, or settle and execute a
release of, any claim which the United States has by virtue of the
right established by section 2651 of this title; or (2) waive any
such claim, in whole or in part, for the convenience of the
Government, or if he determines that collection would result in
undue hardship upon the person who suffered the injury . . .
resulting in care or treatment . . . .

(c) Damages recoverable for personal injury unaffected

No action taken by the United States in connection with the
rights afforded under this legislation shall operate to deny to the
injured person the recovery for that portion of his damage not
covered hereunder.

*Id.* § 2652(b), (c) (1994). The issue before us, calling for an interpretation of the Act, is one of first impression for the appellate courts of this state.

The cardinal principle of statutory construction is to ensure accomplishment of the legislative intent. *See L.C. Williams Oil Co. v. NAFCO Capital Corp.*, 130 N.C. App. 286, 289, 502 S.E.2d 415, 417 (1998). Accordingly, we must consider " 'the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.' " *Hayes v. Fowler*, 123 N.C. App. 400, 404-05, 473 S.E.2d 442, 445 (1996) (citation omitted). "When the language of a statute is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980)). However, if a literal reading of the statutory language "yields absurd results . . . or contravenes clearly expressed legislative intent, 'the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.' " *Id.* (quoting *State v. Barksdale*, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921)).

In the case at bar, we are asked to interpret the FMCRA to determine whether an individual plaintiff may bring an action to recover medical expenses paid through CHAMPUS, or whether that right belongs exclusively to the United States. Because the act requiring interpretation is a federal act and thus is applicable throughout the nation, we begin with a review of other jurisdictions. The majority of jurisdictions that have considered the issue permit a similarly-situated individual plaintiff to *assert* a claim for medical expenses against a tortfeasor. *See, e.g., Dempsey by and through Dempsey v. U.S.*, 32 F.3d 1490 (11th Cir. 1994); *Mays v. United States*, 806 F.2d 976 (10th Cir. 1986); *Kornegay v. U.S.*, 929 F. Supp. 219 (E.D. Va. 1996); *MacDonald v. U.S.*, 900 F. Supp. 483 (M.D. Ga. 1995); *Lozada for and on behalf of Lozada v. U.S.*, 140 F.R.D. 404 (D. Neb. 1991); *1st of America Bank, Mid-Michigan, N.A. v. U.S.*, 752 F. Supp. 764 (E.D. Mich. 1990); *Kennedy v. U.S.*, 750 F. Supp. 206 (W.D. La. 1990); *Guyote v. Mississippi Valley Gas Co.*, 715 F. Supp. 778 (S.D. Miss. 1989); *Transit Homes, Inc. v. Bellamy*, 671 S.W.2d 153 (Ark. 1984), *overruled on other grounds by Peters v. Pierce*, 858 S.W.2d 680 (Ark. 1993); *Whitaker v. Talbot*, 177 S.E.2d 381 (Ga. App. 1970); *Piquette v. Stevens*, 739 A.2d 905 (Md. Ct. Spec. App. 1999), *cert. granted*, 745 A.2d 436 (Md. 2000); *Arvin v. Patterson*, 427 S.W.2d 643 (Tex. Civ.

App. 1968). *But see McCotter v. Smithfield Packing Co., Inc.*, 868 F. Supp. 160, 163 (E.D. Va. 1994) ("Under the Federal Medical Care Recovery Act, the claim for medical damages suffered as the result of a tortious act and provided by the United States belongs solely to the United States.").

We agree with the majority rule that the individual plaintiff's right exists regardless of the United States' right to pursue an action to recover from the tortfeasor. The statute states in section 2651(a) that the United States has "*a* right to recover" as opposed to "*the* right to recover," indicating that the right of the United States is not exclusive. In addition, because the plain language of the FMCRA (a) allows for waiver by the United States of its claim for recovery and (b) specifically protects the rights of injured plaintiffs to recover "that portion of his damage not covered hereunder," it follows that the injured plaintiff has a cause of action for medical expenses against the tortfeasor. Accordingly, we hold that defendant's contention that the United States had the *exclusive* right to pursue recovery for medical expenses is without merit.

[3] This holding does not necessarily mean, however, that recovery by both the United States and the injured plaintiff is permitted. Continuing our review of other jurisdictions, we observe that while courts have allowed an individual plaintiff to bring an action, the amount he or she may recover has been guided largely by the state's collateral source doctrine. In the case at bar, defendant contends that application of North Carolina's collateral source rule precludes Susan's recovery of the medical expenses paid through CHAMPUS. Although the specific language of the collateral source rule varies from state to state, the gist of these rules is to "exclude[] evidence of payments made to the plaintiff by sources other than the defendant when this evidence is offered for the purpose of diminishing the defendant tortfeasor's liability to the injured plaintiff." *Badgett v. Davis*, 104 N.C. App. 760, 764, 411 S.E.2d 200, 203 (1991). The policy behind the rule is to prevent a tortfeasor from "reduc[ing] his own liability for damages by the amount of compensation the injured party receives from an independent source." *Fisher v. Thompson*, 50 N.C. App. 724, 731, 275 S.E.2d 507, 513 (1981).

Our survey of other jurisdictions indicates a generally consistent pattern that when a plaintiff brings an action under the Federal Tort Claims Act (FTCA), *see* 10 U.S.C.A. §§ 2731-1736 (1998), against the United States, which already has paid the medical expenses of the injured plaintiff, CHAMPUS benefits will not fall within the collateral

source rule. Consequently, in such a case, the damages that the plaintiff may recover will be offset by the amount paid by the government. *See, e.g., Dempsey,* 32 F.3d 1490; *Mays,* 806 F.2d 976; *Kornegay,* 929 F. Supp. 219; *MacDonald,* 900 F. Supp. 483; *Lozada,* 140 F.R.D. 404; *1st of America Bank,* 752 F. Supp. 764; *Kennedy,* 750 F. Supp. 206. However, when the tortfeasor is other than the United States, we find less uniformity. One court has interpreted the FMCRA to say that an injured plaintiff's entire claim for medical expenses is subrogated to the government, thus precluding the plaintiff from recovering from the defendant. *See Smith v. Foucha,* 172 So. 2d 318, 322 (La. App. 1965). However, the more common approach has been to apply the collateral source rule, thus allowing the individual plaintiff full recovery of medical expenses when the United States either does not assert or abandons its right under the FMCRA. *See, e.g., Guyote,* 715 F. Supp. 778 (holding that action was controlled by Mississippi's collateral source rule, which precluded tortfeasor from having damages reduced by amount paid by United States); *Bellamy,* 671 S.W.2d 153 (allowing plaintiff to recover damages for future medical expenses where, although Veterans' Administration had intervened pursuant to the FMCRA for cost of both past and future medical expenses, it had abandoned its claim for future medical services before trial and was only awarded costs of past medical services on its subrogation claim); *Whitaker,* 177 S.E.2d 381 (allowing plaintiff to recover medical expenses when government had not acted within the three-year statute of limitations in order to prevent tortfeasor from obtaining a windfall); *Piquette,* 739 A.2d 905 (stating that, pursuant to collateral source doctrine, an injured party may have a claim for medical expenses when the United States does not assert its right under the Act); *Arvin,* 427 S.W.2d 643 (holding that plaintiff could recover where government had not pursued its remedies against defendant). *But see Commercial Union Ins. Co. v. U.S.,* 999 F.2d 581, 588 (D.C. Cir. 1993) (stating that "an agency's decision not to sue is not the equivalent of an express waiver" under section 2652(b)).

We believe that the majority rule, which allows a plaintiff to recover only when the government *fails to assert or abandons* its right of recovery under the FMCRA, is the better rule. The FMCRA was enacted to protect the government's interests by permitting the United States to recover payments made as a result of a tortfeasor's acts. Accordingly, rights under the FMCRA exist for the United States to assert; they may not be asserted defensively to allow a windfall for a tortfeasor. As the *Guyote* court stated:

KAMINSKY v. SEBILE

[140 N.C. App. 71 (2000)]

[T]he focus of the Act is the government's right of recovery; it does not address or purport to affect the injured party's right other than to allow the government to require assignment of that right. Whatever rights of recovery an injured party may have under state law remain intact under the Act.

715 F. Supp. at 780. Additionally, if the government abandons its right or fails to assert it, there is no risk of double liability for the defendant.

Furthermore, the majority rule comports with North Carolina's collateral source rule. The Supreme Court decision in *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987), is the leading authority on the collateral source doctrine. In deciding whether Medicaid payments should fall within the rule, the Court stated:

In *Young v. R.R.*, 266 N.C. 458, 466, 146 S.E.2d 441, 446 (1966), this Court explained the collateral source rule. According to this rule a plaintiff's recovery may not be reduced because a source collateral to the defendant, such as "a beneficial society," the plaintiff's family or employer, or an insurance company, paid the plaintiff's expenses. Rather, an injured plaintiff is entitled to recovery " '. . . [sic] for reasonable medical, hospital, or nursing services rendered him, whether these are rendered him gratuitously or paid for by his employer.' "

The instant case presents the issue of whether the collateral source rule embraces gratuitous government benefits. . . .

With regard to Medicaid payments already received we find our *Young* decision persuasive. In *Young* we held that receipt of insurance proceeds should not reduce a plaintiff's recovery. Medicaid is a form of insurance paid for by taxes collected from society in general. "The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source."

*Id.* at 5-6, 361 S.E.2d at 737-38 (internal citations omitted). The Court went on to find justification for the application of the rule in the fact that "North Carolina law entitles the state to full reimbursement for any Medicaid payments made on a plaintiff's behalf in the event the plaintiff recovers an award for damages." *Id.* at 6, 361 S.E.2d at 738. The statute to which the Court referred is N.C. Gen. Stat. § 108A-57 (Supp. 1985), which provided in pertinent part:

[T]he State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of such assistance, or of his personal representative, his heirs, or the administrator or executor of his estate . . . .

The *Cates* Court went on to say:

Our decisions establish the principle that evidence of a collateral benefit is improper when the plaintiff will not receive a double recovery. *See Spivey v. Wilcox Co.*, 264 N.C. 387, 390, 141 S.E.2d 808, 811-12 (1965). Because Medicaid provides for a right of subrogation in the state to recover sums paid to plaintiffs, we find that the principle enunciated in *Spivey* applies in the instant case as well.

321 N.C. at 6-7, 361 S.E.2d at 738.

Applying the *Cates* analysis to the case *sub judice*, the FMCRA, like section 108A-57(a), provides for a right of subrogation by the United States. Although the government here abandoned its right to recovery under the FMCRA, the existence of the right permits a sufficient analogy between Medicaid benefits and CHAMPUS coverage. Under *Cates*, if a plaintiff recovers for the past Medicaid payments he or she received and the state fails to seek reimbursement, the plaintiff would not then be required to return the money to the defendant-tortfeasor. Similarly, defendant here should not receive a windfall because the government abandoned its right under the FMCRA. Accordingly, plaintiff Susan properly sought to recover for the medical expenses of Jarrett and, because the United States abandoned its right to recover under the FMCRA, the collateral source rule applies to permit full recovery. This assignment of error is overruled.

[4] Finally, defendant contends his motion for JNOV should have been granted on the grounds of *res judicata*. He argues that the United States' prior case and dismissal with prejudice now precludes Susan from asserting a claim for medical expenses.

"Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them.' " *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996) (quoting *Thomas M. McInnis & Assoc. v. Hall*, 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)). For the doctrine to apply to now preclude Susan's claim, defendant must show

" 'that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both [the party asserting *res judicata* and the party against whom *res judicata* is asserted] were either parties or stand in privity with parties.' " *Id.* (alteration in original) (quoting *Hall*, 318 N.C. at 429, 349 S.E.2d at 557). Defendant has failed in this showing; there is no privity between Susan and the United States. In general, "privity" requires that Susan and the government be " 'so identified in interest' " as to " 'represent[] the same legal right.' " *Id.* (citations omitted). Privity is not established by the mere presence of a similar interest in a claim, nor by the fact that the previous adjudication may affect the subsequent party's liability. *See id.* Furthermore, because Susan had no control over the previous litigation and nothing in the record indicates that Susan's interests were legally represented in the previous trial, there can be no privity. *See County of Rutherford ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 76, 394 S.E.2d 263, 266 (1990). This assignment of error is overruled.

No error.

Chief Judge EAGLES and Judge LEWIS concur.