STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, DUKE ENERGY CAROLINAS, LLC, GREENCO SOLUTIONS, INC., NORTH CAROLINA MUNICIPAL POWER AGENCY NUMBER 1, NORTH CAROLINA EASTERN MUNICIPAL POWER AGENCY, ELECTRICITIES OF NORTH CAROLINA, INC., PROGRESS ENERGY CAROLINAS, INC., AND THE PUBLIC STAFF OF THE NORTH CAROLINA UTILITIES COMMISSION v. ENVIRONMENTAL DEFENSE FUND AND NORTH CAROLINA SUSTAINABLE ENERGY ASSOCIATION

No. COA11-142

(Filed 2 August 2011)

**Utilities—renewable energy facilities—biomass resource—renewable energy source**

The North Carolina Utilities Commission did not err by determining that wood derived from whole trees in primary harvest was a biomass resource, and thus, a renewable energy source within the meaning of N.C.G.S. 62-133.8(b) when it approved two thermal electric generating stations as renewable energy facilities.

Appeal by appellants from order entered 11 October 2010 by the North Carolina Utilities Commission. Heard in the Court of Appeals 9 June 2011.

*K&L Gates LLP, by Kiran H. Mehta and Molly L. McIntosh, and Duke Energy Corporation In House Counsel, Charles Alexander Castle, for plaintiff-appellees.*

*Southern Environmental Law Center, by Derb S. Carter and Gudrun Thompson, for intervenor-appellant.*

*North Carolina Sustainable Energy Association, by Kurt J. Olson, and Michael D. Youth, for defendant-appellant.*

STATE EX REL. UTILITIES COMM'N v. ENVTL. DEF. FUND

[214 N.C. App. 364 (2011)]

STEELMAN, Judge.

Where N.C. Gen. Stat. § 62-133.8(a)(6) includes "biomass resource," among the list of resources qualifying as "renewable energy resources," the North Carolina Utilities Commission did not err in determining that wood derived from whole trees in primary harvest is a "biomass resource" and thus a "renewable energy resource" within the meaning of the statute.

## I. Factual and Procedural Background

North Carolina's Renewable Energy and Energy Efficiency Portfolio Standard ("REPS"), N.C. Gen. Stat. § 62-133.8(b), requires electric public utilities to meet renewability and efficiency standards beginning in 2012. If a utility does not meet this requirement, the Commission can impose a penalty up to $1,000 for each violation. *See* N.C. Gen. Stat. § 62-310(a); *In re Rulemaking Proceeding to Implement Session Law 2007-397*, No. E-100, Sub 113, 2008 WL 619061, at *58-61 (N.C.U.C. Feb. 29, 2008) (determining that the Commission can enforce REPS under its general enforcement authority).

Any electric utility that wants to generate tradable Renewable Energy Certificates ("RECs"), which can be used to comply with REPS, must register its facility as a "renewable energy facility" with the North Carolina Utilities Commission ("Commission"). N.C. Gen. Stat. § 62-133.8(a)(6); 4 N.C. Admin. Code 11.R8-66(b) (2010). Facilities that generate electric power using a "renewable energy resource" are considered renewable energy facilities. N.C. Gen. Stat. § 62-133.8(a)(7). The statute defines "renewable energy resource" to include "a biomass resource, including agricultural waste, animal waste, wood waste, spent pulping liquors, combustible residues, combustible liquids, combustible gases, energy crops, or landfill methane." § 62-133.8(a).

On 1 March 2010 Duke Energy Carolinas, LLC ("Duke") applied to the Commission to register two of its thermal electric generating stations, Buck Steam Station ("Buck") and Lee Steam Station ("Lee"), as renewable energy facilities. Duke had conducted production trials at both stations in which a blend of wood chips and coal was used as fuel.

The Commission determined that wood derived from whole trees in primary harvest is a "biomass resource" and thus a "renewable energy resource" within the meaning of the statute and approved Duke's applications for the Buck and Lee stations.

## II. N.C. Gen. Stat. § 62-133.8(a)

Appellants contend that the Commission erred in its conclusion that wood fuel from primary harvest whole trees is a "biomass resource" and thus a "renewable energy resource" within the meaning of N.C. Gen. Stat. § 62-133.8(a). We disagree.

### A. Standard of Review

The procedure for appeals from final orders or decisions of the Utilities Commission is established by N.C. Gen. Stat. 62-94, *et seq.* The Court may reverse the Commission's decision if the appellants' rights have been prejudiced because the decision was affected by an error of law. N.C. Gen. Stat. § 62-94(b)(4). Questions of law are reviewed *de novo.* N.C. Gen. Stat. § 62-94(b) ("the court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions").

### B. Analysis

When construing a statute, the court looks first to its plain meaning, *State v. Ward,* 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010), reading words that are not defined by the statute according to their plain meaning as long as it is reasonable to do so, *Woodson v. Rowland,* 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991). The court must give effect to the plain meaning as long as the statute is clear and unambiguous. *State v. Jackson,* 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001).

The statute at issue in the instant case is not ambiguous because all wood fuel is encompassed by the meaning of the term "biomass." Since the statute does not specifically define "biomass," we look to its ordinary meaning. *The New Oxford American Dictionary* defines "biomass" as "organic matter used as fuel." *The New Oxford American Dictionary* 166 (Elizabeth J. Jewell et al. eds., 2d ed. 2005). A report produced by the North Carolina Biomass Council defines biomass as "any organic matter that is available on a renewable or recurring basis, including *agricultural crops and trees, wood and wood wastes and residues,* plants (including aquatic plants), grasses, residues, fibers, animal wastes, and segregated municipal waste." Ben Rich, North Carolina Biomass Council, *The North Carolina Biomass Roadmap: Recommendations for Fossil Fuel Displacement through Biomass Utilization 4* (2007), http://www.ncsc.ncsu.edu/bioenergy/docs/NC_Biomass_Roadmap.pdf (emphasis added). The Commission applied the definition from *The Biomass Roadmap* in considering whether a particular type of fuel is

a "biomass resource." *See In re EPCOR USA North Carolina, LLC*, SP-165, Sub 3, 2009 WL 4906554, at *2 (N.C.U.C.).

All wood fuel is clearly encompassed by each of these definitions. Not only is wood listed as an example of a biomass in *The Biomass Roadmap*, wood is also organic and renewable, which are the criteria encompassed by the definitions. Therefore, wood fuel from primary harvest whole trees is a biomass resource within the meaning of the statute.

Appellants argue that not all biomass is a biomass resource within the meaning of the statute. Appellants advance two theories to support this argument. First, that the list of biomass resources provided in the statute is an exhaustive list; and second, that the doctrine of *ejusdem generis* limits the term "biomass resources" so that it only includes biomass material of the same type as the listed resources. The plain meaning of the statute does not support either theory.

First, the language of the statute indicates that the legislature did not intend to limit the term "biomass resources" to only include the resources listed in the statute. *The New Oxford American Dictionary* defines the word "including" to mean "containing as part of the whole being considered." *The New Oxford American Dictionary, supra* at 854. Similarly, *Black's Law Dictionary* explains, "The participle including typically indicates a partial list." *Black's Law Dictionary* 831 (9th ed. 2009). Both of these definitions suggest that a list introduced by the word "including" would be illustrative, rather than exhaustive. Moreover, our Supreme Court has indicated that use of the word "including" expresses legislative intent to list examples. *See N. Carolina Tpk. Auth. v. Pine Island, Inc.*, 265 N.C. 109, 120, 143 S.E.2d 319, 327 (1965). We hold that the list provided by the legislature is not an exhaustive list of all of the biomass materials included in the broad term "biomass resources."

Second, the term "biomass resources" is not limited by the doctrine of *ejusdem generis*.

" '[T]he *ejusdem generis* rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.' "

368 IN THE COURT OF APPEALS

STATE ex rel. UTILITIES COMM'N v. ENVTL. DEF. FUND

[214 N.C. App. 364 (2011)]

*State v. Lee,* 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970) (internal citations omitted).

North Carolina courts have followed this explanation of how the doctrine of *ejusdem generis* should be applied by employing the doctrine when a list of specific terms is *followed* by a general term. *See Liborio v. King,* 150 N.C. App. 531, 536-37, 564 S.E.2d 272, 276 (2002) (interpreting the term "misrepresentation" to be limited to knowing and intentional behavior, where the term followed the terms fraud and deception); *Smith v. Smith,* 314 N.C. 80, 87, 331 S.E.2d 682, 687 (1985) (interpreting a provision allowing the court to consider "[a]ny other factor which the court finds to be just and proper" to be limited to economic factors, where the provision followed eleven other provisions having to do with the economy of the marriage); *Lee,* 277 N.C. at 244, 176 S.E.2d at 774 (interpreting the phrase "or other like weapons" to be limited to automatic or semiautomatic weapons, where the phrase followed a specific list of automatic and semiautomatic weapons).

The provision at issue here does not fit the doctrine as described in *Lee* because the general phrase "biomass resources" precedes the list of specific examples.

This Court has on occasion applied the doctrine to a general term that *preceded* a list of specific terms. *See Knight v. Town of Knightdale,* 164 N.C. App. 766, 769-70, 596 S.E.2d 881, 884 (2004) (holding that a zoning ordinance which allows the town to consider "adverse effects expected from the development, including without limitation, stormwater, noise, odor, on and off-street parking, dust, light, smoke and vibration" only permits the town to consider adverse affects that are physical in nature). However, this Court construed the language in *Knight* narrowly because our Supreme Court has held that limitations and restrictions in zoning ordinances should be interpreted to include only what is clearly within their scope since such limitations interfere with common law property rights. *Id.* (citing *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjustment,* 334 N.C. 132, 138-39, 431 S.E.2d 183, 188 (1993)).

Even assuming arguendo that the doctrine of *ejusdem generis* can be applied when the general term precedes the specific, the rule would not apply in the instant case because the specific terms do not have a unifying characteristic. "The rule does not apply to restrict the operation of a general expression where the specific things enumerated have no common characteristic, and differ greatly from one

another." *State v. Fenner*, 263 N.C. 694, 698, 140 S.E.2d 349, 352 (1965). Appellants argue that the resources fall into one of two categories: waste or intentionally produced energy products. However, these categories do not meet the test established in *Fenner* because they are very different from each other. *See Id.* Moreover, we do not find any other characteristic that unifies all of the examples provided by the legislature.

Any resource that can be considered a biomass because it is organic and renewable is a biomass resource within the plain meaning of the statute. All wood fuel meets these criteria and thus is a "biomass resource" and a "renewable energy resource."

Appellants' arguments are without merit.

AFFIRMED.

Judges CALABRIA and ELMORE concur.