**IN RE TOWN OF SMITHFIELD**

[230 N.C. App. 252 (2013)]

IN THE MATTER OF APPLICATION BY TOWN OF SMITHFIELD FOR APPROVAL OF
AGREEMENT BETWEEN ELECTRIC SUPPLIERS WITH CAROLINA POWER & LIGHT
COMPANY D/B/A PROGRESS ENERGY CAROLINAS, INC.

No. COA13-435

Filed 5 November 2013

**Utilities—agreement—allocation of rights—not authorized by statute**

The Utilities Commission did not err by denying approval of an agreement between the Town of Smithfield and Carolina Power & Light Company, d/b/a Progress Energy Carolinas, Inc. ("Progress") that allocated rights to serve certain areas within the town. N.C.G.S. § 160A-331.2(a) only authorizes those agreements wherein the parties exchange rights to serve premises that each would not have the right to serve but for the agreement. Because both parties had rights to serve the premises they purported to exchange, the agreement was not authorized by statute.

Appeal by Town of Smithfield from Order entered on or about 27 December 2012 by the North Carolina Utilities Commission. Heard in the Court of Appeals 9 September 2013.

*Poyner Spruill LLP by Michael S. Colo, for applicant-appellant Town of Smithfield.*

*Hewett & Wood, P.A. by Marcus C. Burrell, for intervenor-appellee Theron Lee McLamb; and Narron, O'Hale & Whittington, P.A. by Jason W. Wenzel, for intervenor-appellee Partners Equity Group.*

STROUD, Judge.

The Town of Smithfield ("Smithfield"), a municipality and electric provider, appeals an order entered by the Utilities Commission on or about 27 December 2012 denying approval to an agreement between it and Carolina Power & Light Company, d/b/a Progress Energy Carolinas, Inc. ("Progress") that allocated rights to serve certain areas within the Town of Smithfield. For the following reasons, we affirm.

## I. Background

Smithfield and Progress are primary and secondary electric providers, respectively, within the corporate limits of the Town of Smithfield.

In 2010, Smithfield's staff reviewed the location of its electric facilities and decided that Progress did not have the right to serve some of the customers that it was then serving. Progress disagreed.

To resolve the dispute, Progress and Smithfield entered into an "Agreement Between Electric Suppliers" ("Agreement") on 10 January 2012. In the Agreement, Smithfield was allocated the exclusive right to serve all premises in the Smithfield Crossing area, the Smithfield Business Park, and Lot 7 on North Equity Drive. Smithfield also acquired the exclusive right to serve all premises not currently requiring electric service which might tap into the Fieldcrest Feeder, an area designated area "D" on the map accompanying the agreement. Progress was allocated the right to serve all premises in the North Equity Drive and South Equity Drive areas other than Lot 7.

Smithfield and Progress filed an application for approval of their agreement with the Utilities Commission on 31 January 2012. Theron McLamb and Partners Equity Group ("Partners Equity") then filed separate complaints seeking to intervene. The Commission granted complainants' request to intervene.

Complainants are property owners in the area covered by the agreement. Partners Equity Group ("Partners Equity") owns Lot 7 on North Equity Drive, though it was under contract to sell the property at the time of the hearing. Lot 7 was vacant at the time of the hearing and had no premises requiring electric service other than a Smithfield sewer lift station. Theron McLamb purchased land in the Venture Drive area of Smithfield in 1998, 2005, and 2006. Like the Partners Equity property, there are no premises on Mr. McLamb's property requiring electric service, though Mr. McLamb intends to eventually create a commercial development on the property.

The Commission held a hearing on 18 July 2012 and denied the application by order on 27 December 2012 wherein it made a number of findings of fact and detailed conclusions of law explaining its reasoning. Smithfield filed written notice of appeal on 25 January 2013. Progress does not appeal.

## II. Standard of Review

The procedure for appeals from final orders or decisions of the Utilities Commission is established by N.C. Gen. Stat. 62–94, *et seq.* The Court may reverse the Commission's decision if the appellants' rights have been prejudiced because the decision was affected by an error of law.

N.C. Gen. Stat. § 62–94(b)(4). Questions of law are reviewed *de novo*. N.C. Gen. Stat. § 62–94(b) ("the court shall decide all relevant questions of law [and] interpret constitutional and statutory provisions").

*State ex rel. Utilities Com'n v. Environmental Defense Fund,* ___ N.C. App. ___, ___, 716 S.E.2d 370, 372 (2011).

### III. Analysis

Smithfield argues that the Utilities Commission erred in its interpretation of N.C. Gen. Stat. § 160A-331.2(a). Specifically, it contends that the Commission engrafted additional requirements not found in the statute onto agreements entered into pursuant to that statute. This case is one of first impression under N.C. Gen. Stat. § 160A-331.2. For the following reasons, we affirm.

### A. Statutory Construction

When construing a statute, the court looks first to its plain meaning, reading words that are not defined by the statute according to their plain meaning as long as it is reasonable to do so. The court must give effect to the plain meaning as long as the statute is clear and unambiguous.

*Environmental Defense Fund,* ___ N.C. App. at ___, 716 S.E.2d at 372 (citations omitted).

The present dispute focuses on the meaning of N.C. Gen. Stat. § 160A-331.2(a). That statute provides:

The General Assembly finds and determines that, in order to avoid the unnecessary duplication of electric facilities and to facilitate the settlement of disputes between cities that are primary suppliers and other electric suppliers, it is desirable for the State to authorize electric suppliers to enter into agreements pursuant to which the parties to the agreements allocate to each other the right to provide electric service to premises each would not have the right to serve under this Article but for the agreement, provided that no agreement between a city that is a primary supplier and another electric supplier shall be enforceable by or against an electric supplier that is subject to the territorial assignment jurisdiction of the North Carolina Utilities Commission until the agreement has been approved by the Commission. The Commission shall approve an

agreement entered into pursuant to this section unless it finds that such agreement is not in the public interest. Such agreements may allocate the right to serve premises by reference to specific premises, geographical boundaries, or amounts of unspecified load to be served, but no agreement shall affect in any way the rights of other electric suppliers who are not parties to the relevant agreement. The provisions of this section apply to agreements relating to electric service inside and outside the corporate limits of a city.

N.C. Gen. Stat. § 160A-331.2(a).

"The general rule in statutory construction is that a statute must be construed as written." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 410, 537 S.E.2d 248, 262 (2000) (citation, quotation marks, and brackets omitted), *disc. rev. on additional issues denied*, 353 N.C. 378, 547 S.E.2d 14, *app. withdrawn*, 354 N.C. 219, 553 S.E.2d 684 (2001). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Miller*, 357 N.C. 316, 324, 584 S.E.2d 772, 780 (2003) (citation, quotation marks, brackets, and emphasis omitted).

No party argues that the statute is ambiguous; they simply disagree on what it "plainly" means. Smithfield contends that we should interpret the statute to permit agreements between electric suppliers regardless of the actual rights of each to serve the properties concerned because the purpose of this statute is to "facilitate the settlement of disputes between cities that are primary suppliers and other electric suppliers."

We hold that the Commission correctly interpreted N.C. Gen. Stat. § 160A-331.2(a) to plainly mean what it says: agreements authorized under this statute are those in "which the parties to the agreements allocate to each other the right to provide electric service to premises *each would not have the right to serve under this Article but for the agreement.*" N.C. Gen. Stat. § 160A-331.2(a) (emphasis added).

Smithfield argues that despite this "but for" language, the actual rights of the parties to the agreement are immaterial. It reasons that the Commission's interpretation would render the statute useless because the disputes between primary and secondary electric providers usually focus on who has which rights to serve. Therefore, Smithfield says, the

statute "authorizes electric suppliers to negotiate the allocation of territorial service rights between themselves to the extent they see fit."

"We cannot accept this contention without giving to the statutory phraseology a distorted meaning at complete variance with the language used. This we are not permitted to do." *State v. Welch*, 232 N.C. 77, 82, 59 S.E.2d 199, 203 (1950). Even assuming that the types of disputes raised by Smithfield are those that the Legislature actually intended to resolve by agreement under this statute, "we are powerless to construe away the limitation just because we feel that the legislative purpose behind the requirement can be more fully achieved in its absence." *Appeal of North Carolina Sav. and Loan League*, 302 N.C. 458, 468, 276 S.E.2d 404, 411 (1981).[1]

If the statute truly "authorize[d] electric suppliers to negotiate the allocation of territorial service rights between themselves to the extent they see fit," the Legislature could have left out the phrase "each would not have the right to serve under this Article but for the agreement" and the statute would have the same meaning. They also could have left out the "right to serve" language and simply declared that parties to such agreements can acquire rights that each would not have otherwise (e.g., making a non-exclusive right exclusive). Instead, the Legislature restricted the agreements permitted under § 160A-331.2(a) to those wherein "the parties to the agreement[] allocate to each other the right to provide electric service to premises each would not [otherwise] have the right to serve under this Article." N.C. Gen. Stat. § 160A-331.2(a).

Under Smithfield's interpretation, the "but for" and "right to serve" language is entirely superfluous. Such an interpretation would contravene the principle that "a statute should not be interpreted in a manner which would render any of its words superfluous." *State v. Ramos*, 193 N.C. App. 629, 637, 668 S.E.2d 357, 363 (2008) (citation and quotation marks omitted), *aff'd*, 363 N.C. 352, 678 S.E.2d 224 (2009). Instead, "[w]e

---

1. We are skeptical of Smithfield's assertion that such disputes are the only, or even primary, disputes the Legislature intended to resolve through agreements under this statute. The territorial assignment provisions of "[t]he Electric Act [were] intended to resolve the disputes of electric suppliers with limited litigation. The language of the Electric Act was carefully chosen to provide certainty with respect to service rights and to promote orderly competition among electric suppliers." *City of New Bern v. Carteret-Craven Elec. Membership Corp.*, 356 N.C. 123, 127, 567 S.E.2d 131, 133 (2002) (citations omitted); *see also Duke Power Co. v. City of Morganton*, 90 N.C. App. 755, 758, 370 S.E.2d 54, 56 (observing that the Electric Act "carefully defined and established the rights of competing power suppliers according to lines that were in place on a set date—matters that can usually be ascertained without either difficulty or dispute; and it gave no effect whatever to subsequent events of any kind . . . ."), *disc. rev. denied*, 323 N.C. 364, 373 S.E.2d 544 (1988).

construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because it is always presumed that the legislature acted with care and deliberation." *Id.* (citation and quotation marks omitted).

We conclude that N.C. Gen. Stat. § 160A-331.2(a) only authorizes those agreements wherein the parties "allocate to each other the right to provide electric service to premises each would not have the right to serve under this Article but for the agreement." N.C. Gen. Stat. § 160A-331.2(a). Therefore, to determine whether the Commission erred in concluding that the agreement submitted by Smithfield was not permitted under the statute, we must consider whether the rights to serve acquired by the parties to the Agreement are rights that each party would not have but for the agreement.

We do agree with Smithfield that nothing in § 160A-331.2(a) restricts the agreements to exchanges of exclusive rights to serve. But we do not think that the Commission meant to restrict its interpretation in that way—it was simply noting that in *this* case, both parties have concurrent, non-exclusive rights to serve the future premises at issue and therefore neither party was acquiring rights to serve it did not already have. It is conceivable that a party could acquire a non-exclusive right through an agreement under this statute to serve premises that it would otherwise have no right to serve under Chapter 160A, whether inside or outside corporate limits.

B. Application

We must now decide whether the Commission correctly concluded that the agreement submitted for approval by Smithfield is not authorized by N.C. Gen. Stat. § 160A-331.2(a) because the parties to the Agreement are not acquiring rights to serve premises each would not have but for the agreement. To resolve this question, we must look to what rights each party to the Agreement already possessed apart from the agreement.

Under N.C. Gen. Stat. § 160A-332(a)(5) (2011),

> Any premises initially requiring electric service after the determination date which are located wholly or partially within 300 feet of the primary supplier's lines and are located wholly or partially within 300 feet of the secondary supplier's lines, as such suppliers' lines existed on the determination date, may be served by either the secondary supplier or the primary supplier, whichever the consumer

chooses, and no other supplier shall thereafter furnish service to such premises, except with the written consent of the supplier then serving the premises.

The Commission found that on the determination date, 30 June 1994, "Lot 7 was wholly within 300 feet of a Progress line and was partially within 300 feet of a Smithfield line." The Commission further found that on the determination date, "the McLamb Properties were partially within 300 feet of a Progress line and partially within 300 feet of a Smithfield line." The Commission noted that no premises requiring electric service have been built on either property. Nevertheless, based on the dimensions of the property, which limit the possible locations of future structures, and the location of the lines, it concluded that, pursuant to N.C. Gen. Stat. § 160A-332(a)(5), "both Progress and Smithfield have an equal right to serve any premises hereafter built on Lot 7 or on the portions of the McLamb properties, that are partially within 300 feet of both" suppliers' lines "until the electricity consumer of any such future premises designates an electric supplier."

The Agreement purported to give Smithfield the exclusive right to serve all premises in the Smithfield Crossing area, the Smithfield Business Park, and Lot 7 on North Equity Drive. Progress was allocated the right to serve all premises in the North Equity Drive and South Equity Drive areas other than Lot 7. Both complainants' properties were assigned to Smithfield.

Smithfield does not challenge any of the Commission's findings on this issue or even its conclusion that, absent the agreement, both Smithfield and Progress would likely have the right to serve any premises on the contested properties.

Based on these uncontested findings, we hold that the Commission correctly concluded that the Agreement does not meet the requirements of N.C. Gen. Stat. § 160A-331.2(a). Specifically, the parties to the Agreement are not exchanging "the right to provide electric service to premises each would not have the right to serve under this Article but for the agreement" because each party already had the right to serve those premises. N.C. Gen. Stat. § 160A-331.2(a). Since the agreement does not meet the requirements of the statute, we need not reach the parties' arguments about whether the Agreement is in the public interest or whether the Commission applied the correct burden of proof in making that determination.

**IN RE TWIN CNTY. MOTORSPORTS, INC.**

[230 N.C. App. 259 (2013)]

## IV. Conclusion

The Commission correctly interpreted N.C. Gen. Stat. § 160A-331.2(a) to only authorize those agreements wherein the parties exchange rights to serve premises that each would not have the right to serve but for the agreement. Because both parties had rights to serve the premises they purported to exchange, the Agreement was not authorized by the statute. Therefore, we affirm the Commission's order denying approval of the agreement.

AFFIRMED.

Chief Judge MARTIN and GEER concur.